IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 08-cv-00451-RPM

TLINGIT-HAIDA REGIONAL HOUSING AUTHORITY,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT;
SHAUN DONOVAN, Secretary of Housing and Urban Development;
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing; and
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

Defendants.

## FINDINGS, CONCLUSIONS AND ORDER FOR JUDGMENT

On March 4, 2008, Plaintiff Tlingit-Haida Regional Housing Authority ("Tlingit-Haida" or "the Tribe") filed this action for judicial review under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., claiming that the Defendants (collectively "HUD") violated the Native American Housing Assistance and Self-Determination Act of 1996 ("NAHASDA"), 25 U.S.C. § 4101 et seq., by reducing the number housing units counted as Formula Current Assisted Stock ("FCAS") for the calculation of the Tribe's share of the annual Indian Housing Block Grant ("IHBG") and recapturing IHBG funds which the Tribe had received in past years for those units. Tlingit-Haida filed an amended complaint for declaratory and injunctive relief on June 17,

2010, requesting various and alternative forms of relief, including the disgorgement of recaptured funds.

Jurisdiction is provided by the APA and by 28 U.S.C. §§ 1331, 1346 and 1362. The Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201, and jurisdiction to grant injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202.

The Administrative Record ("AR") was filed on July 30, 2010.

This action is governed by the version of NAHASDA that existed before it was amended by the Native American Housing Assistance and Self-Determination Reauthorization Act of 2008, Pub. L. No. 110-411, 122 Stat. 4319 (2008). Legal issues common to this action and related actions were determined in two previous memorandum opinions and orders in *Fort Peck Housing Authority v. HUD et al.*, Civil Action No. 05-cv-00018-RPM, dated August 31, 2012, and March 7, 2014.[1]

The order dated March 7, 2014 required the plaintiffs in the coordinated actions to submit proposed forms of judgment, specifying the amounts to be paid to each tribe or tribal housing entity and the asserted sources of payment. On March 26, 2014, HUD moved for the establishment of scheduling orders, requesting additional briefing before the entry of judgments.

Tlingit-Haida submitted its proposed judgment on April 15, 2014 and a revised proposed judgment on June 9, 2014. In a response to HUD's motion for scheduling order, Tlingit-Haida

---

[1] The coordinated cases are *Fort Peck Housing Authority  HUD et al.*, No. 05-cv-0018-RPM; *Blackfeet Housing et al. v. HUD et al.*, No. 07-cv-1343-RPM; *Tlingit-Haida Regional Housing Authority v. HUD et al.*, No. 08-cv-0451-RPM; *Navajo Housing Authority v. HUD et al.*, No. 08-cv-0826-RPM; *Modoc Lassen Indian Housing Authority v. HUD et al.*, No. 08-cv-2573-RPM; *Choctaw Nation of Okla. v. HUD et al.*, No. 08-cv-2577-RPM; *Sicangu Wicoti Awanyakapi Corp. et al. v. HUD et al.*, No. 08-cv-2584-RPM.

identified the challenged agency actions and the factual and legal support for the relief it requests.[2]

HUD replied on May 23, 2014, addressing, *inter alia*, the relief requested by Plaintiff Tlingit Haida. HUD's motion for a scheduling order is now moot.

The Administrative Record reflects that in September, 2001, HUD notified Tlingit-Haida that the Tribe "may have incorrectly received credit in Fiscal Years (FY) 1998, 1999, 2000 and 2001 for 155 Mutual Help units under the Formula Current Assisted Stock (FCAS) component of the Indian Housing Block Grant (IHBG) program."[3] In response, Tlingit-Haida disputed HUD's analysis of its FCAS and explained the Tribe's reasons for continuing to include mutual help units in its FCAS after the expiration of the 25-year lease/purchase period.

In a letter to HUD dated November 8, 2001, Tlingit-Haida's Executive Director, Dr. Blake Y. Kazama, explained that before December 1998, Tlingit-Haida had been embroiled in a region-wide class action lawsuit over the condition of the region's HUD-assisted homes.[4] Tlingit-Haida is the Native Alaskan housing authority for most of the Southeast Alaska Panhandle, and the class action lawsuit concerned constructions defects "attributable to the fact that the homes were designed and built for southern lower 48 climates."[5] Dr. Kazama's letter

---

[2]The Plaintiff's response and proposed judgment show that the only challenges it is pursuing are challenges to HUD's decisions to take back funds granted in FYs 1998 through 2008 – i.e, the "recaptures" that were accomplished without the hearing required under the pre-amendment version of NAHASDA. It is assumed that other claims alleged in the Plaintiff's complaint are abandoned.

[3]AR Vol. 2, Tab 31 at THRHA000672.

[4]AR Vol. 2, Tab 32 at THRHA00674-77.

[5]*Id.*

stated that the lawsuit had been settled pursuant to a HUD-approved settlement which required repairs to the homes of the class action plaintiffs. Other terms of the settlement required that 354 TKIII [Turnkey III] housing units be converted into mutual help units, which had the effect of accelerating the conveyance-eligibility date of those units. The repairs were extensive and Tlingit-Haida obtained funding from HUD's Comprehensive Grant Program ("CGP") to assist with the financing of the repairs. Dr. Kazama's letter explained that problems arose during the repair process and that angry homebuyers engaged in "payment boycotts," which led to the accumulation of large tenant account receivables ("TARs"). In the letter dated November 8, 2001, Tlingit-Haida asserted that the Tribe was entitled to continued FCAS funding for units being repaired under the Comprehensive Grant Program and units that had accumulated TARs.[6]

HUD rejected the Tribe's reasons for maintaining the disputed units in its FCAS. In a letter dated January 2, 2002, HUD stated that "while we agree that rehabilitation work is an eligible affordable housing activity under the IHBG Program, such activity does not preclude the timely conveyance of 1937 Act units whether it is funded with IHBG or Comprehensive Grant funds. We cannot include such units in FCAS."[7]

Tlingit-Haida protested HUD's response and requested reconsideration in a letter dated January 25, 2002, from Business Manager Ed Phillips to HUD, which stated "It was simply not practical or appropriate for us to convey the units until the work was completed."[8] Phillips' letter enclosed a revised analysis of the Tribe's FCAS, set forth on an 18-page spreadsheet

---

[6]*Id.*

[7]AR Vol. 2, Tab 35 at THRHA000701-02.

[8]AR Vol. 2, Tab 36 at THRHA000703-04.

captioned "TLINGIT-HAIDA REGIONAL HOUSING AUTHORITY FCAS ELIGIBILITY  As revised 1/25/02."[9]

In a letter dated May 29, 2002, HUD rejected Tlingit-Haida's request for reconsideration.[10]  HUD reiterated that "rehabilitation work does not preclude timely conveyance" and also stated that because "[24 C.F.R.] § 1000.318(1)(b) requires that the tribe/TDHE/IHA must actively enforce strict compliance by the homebuyer with the terms and conditions of the [Mutual Help Occupancy Agreement], including the requirements for full and timely payment ... we cannot include these units as FCAS."[11]  HUD asserted that the Tribe had received grant overfunding during FYs 1998 through 2002, in the amount of $1,165,299.[12]

In a subsequent letter dated September 19, 2002, HUD notified Tlingit-Haida that HUD would recover the grant overfunding through a 5-year repayment schedule beginning in FY 2003.[13]

HUD actually recouped $1,139,658 from Tlingit-Haida through deductions from Tlingit-Haida's grant awards for FYs 2003 through 2007 as follows:  $233,059 in 2003; $207,419 in 2004; $233,060 in 2005; $233,060 in 2006, and $233,060 in 2007, for a total recapture of

---

[9] AR Vol. 2, Tab 36 at TRHA00705-722.

[10] AR Vol. 2, Tab 37 at THRHA000723-25.

[11] Id. at THRHA000723-24.

[12] Id. at THRHA000724.

[13] AR Vol. 2, Tab 43 at THRHA000746.

$1,139,658.[14] HUD did not provide a hearing to Tlingit-Haida before it accomplished those recaptures.

Tlingit-Haida now seeks restoration of the $1,139,658, asserting that the recaptures were illegal according to this Court's prior rulings.[15]

In reply, HUD preserves its prior arguments that the agency had authority independent of NAHASDA to recover grant overpayments that resulted from erroneous formula unit data; that the Court lacks jurisdiction under 5 U.S.C. § 702 to order the monetary relief sought; that any procedural error was harmless, and the only appropriate remedy would be to remand to HUD for a hearing and decision in the first instance. Those arguments were rejected in the orders dated August 31, 2012, and May 7, 2014.

In Section III of its reply, HUD also argues that Tlingit-Haida cannot show that it was prejudiced by the lack of a hearing, stating that Tlingit-Haida told HUD that "hundreds of the overpaid units had already been conveyed at the relevant time." In support of that contention, HUD cites the spreadsheet enclosed with Phillips' January 25, 2002 letter. That spreadsheet lists six columns of information for each of 17 housing projects under the headings: (1) account; (2) homebuyer; (3) move-in; (4) deed; (5) "indefensible for," and (6) justification.[16]

---

[14] AR Vol. 2, Tab 46 at THRHA000751; Tab 54 at THRHA00078282; Tab 58 at THRHA000751; Tab 62 at THRHA000808; Tab 67 at THRHA000822.

[15] Tlingit-Haida stipulates that the correct amount of FCAS recaptured is $1,139,658, and not $1,165,299, as requested in its proposed order dated April 15, 2014. (Pl.'s mot. to strike at p. 1, n.1[#83]).

[16] AR Vol. 2, Tab 36 at TRHA000705. The document also includes handwriting of an unidentified person.

HUD draws particular attention to the first page of the spreadsheet, which lists 30 units in the project known as "Angoon I."[17]  As an example, HUD points out that the spreadsheet indicates that unit 0129-01 (occupied by Kelly and Peggy Williams) was conveyed on February 4, 1994.  HUD contends this shows that Tlingit-Haida was not entitled to FCAS funding for that unit during the years in question (1998 through 2002) because the unit had been conveyed.  HUD suggests this evidence shows HUD properly recaptured grant funds that it mistakenly paid for units that the Tribe no longer owned.

Tlingit-Haida moved to strike section III of HUD's reply, arguing that it mischaracterizes the Administrative Record.  Tlingit-Haida asserts that HUD has drawn erroneous conclusions about the spreadsheet based on the improper assumption that the units listed are ones for which FCAS was paid in the disputed years and then later recaptured by HUD.  To demonstrate that assumption is wrong, Tlingit-Haida shows that for FY 2001, the Tribe claimed that only 24 of the 30 units in the Angoon I Project were FCAS-eligible, and states that Tribe did not include the Williams' unit in its FCAS count.  Tlingit-Haida states that there is no record support showing that any home for which disputed FCAS was paid had been conveyed.  That is, Tlingit-Haida states that its claims in this action challenge only the recapture of grant funds for units that the Tribe still owned.

The Administrative Record does not contain enough information to resolve this factual dispute.  That should have been done at the hearing which HUD should have provided as this court has explained in prior rulings.  It would be unjust to further delay the entry of a final

---

[17]*Id.* at THRHA000705. Angoon I is identified in other documents as Project AK94B004050.

judgment in this six year old case to remand for a hearing to determine whether HUD's argument has merit. Accordingly, the Tribe's explanation is accepted.

As stated in this Court's Memorandum Opinion and Order dated August 31, 2013, HUD acted arbitrarily, capriciously and contrary to law when it eliminated FCAS funding for units undergoing federally-funded repair or modernization work. In addition, the Court has ruled that HUD's policy about TARs expressed in Guidance 98-19 was an arbitrary and capricious exercise of HUD's regulatory authority and contrary to law. In short, HUD misapplied 24 C.F.R. § 1000.318 when it determined that Tlingit-Haida had received grant overpayments for units undergoing repair and units that had not been conveyed because the homebuyers had not paid the full amount due.

The applicable version of 24 C.F.R. § 1000.532 provided that "grant amounts already expended on affordable housing activities may not be recaptured or deducted from future assistance provided on behalf of an Indian tribe." When HUD recaptured the purported grant overpayments from Tlingit-Haida, HUD had not considered whether the Tribe had spent those grant amounts on affordable housing activities. Notably, HUD's letter dated January 2, 2002, acknowledged that rehabilitation work is an eligible affordable housing activity under the IHBG Program.

Tlingit-Haida has established its right to an affirmative injunction requiring HUD to restore to it the amount of $1,139,658.

Pursuant to a stipulation dated March 6, 2008 [#3], and court order dated March 18, 2008 [#8], HUD has set aside the amount of $1,499,887 in Fiscal Year 2008 funds to be available for the return of FCAS funding to Plaintiff Tlingit-Haida Regional Housing Authority.

Based on the foregoing findings and conclusions and those stated in the Memorandum Opinions and Orders dated August 31, 2012 and March 7, 2014, it is

ORDERED that the Defendants' motion for scheduling order is moot; it is

FURTHER ORDERED that the Plaintiff's motion to strike Section III of HUD's reply is granted; it is

FURTHER ORDERED that final judgment shall enter requiring the Defendants to restore to Plaintiff Tlingit-Haida Regional Housing Authority the amount of $1,139,658, for Indian Housing Block Grant funds that were illegally recaptured from the Plaintiff for fiscal years 1998 through 2002. Any such restoration shall be in addition to the full IHBG allocation that would otherwise be due to the Plaintiff under the Native American Housing Assistance and Self-Determination Act ("NAHASDA") in a given fiscal year as calculated without application of the amount of the Judgment; it is

FURTHER ORDERED that Defendants shall make restoration of the IHBG funds from all available sources, including, but not limited to the funds set aside for Plaintiff's benefit by stipulation of the parties on March 6, 2008 and ordered by this court in an Order entered on March 18, 2008 in the amount of $1,499,887; it is

FURTHER ORDERED that the restoration of grant funds to the Plaintiff from the amount set aside pursuant to the parties' stipulation dated March 6, 2008 shall occur within 30 (thirty) days of the Judgment; it is

FURTHER ORDERED that with respect to grant funding for those fiscal years from FY 1997 through and including 2008, the Defendants shall refrain from threatening or implementing any recapture of IHBG funds from the Plaintiff and shall not act upon any

threatened recapture without first complying with the requirements of Section 401(a) of the NAHASDA [25 U.S.C. § 4161(a)] as that subsection existed prior to the effective date of Public Law 110-411, and it is

FURTHER ORDERED that the Clerk shall enter judgment providing relief to the Plaintiff as set forth above and awarding the Plaintiff its costs upon the filing of a Bill of Costs pursuant to D.C.COLO.LCivR 54.1.

Date:  June 19, 2014

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior District Judge