# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-00451-RPM

TLINGIT-HAIDA REGIONAL HOUSING AUTHORITY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
BEN CARSON, Secretary of Housing and Urban Development,
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing,
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

    Defendants.

---

Civil Action No. 08-cv-00826-RPM

NAVAJO HOUSING AUTHORITY,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
BEN CARSON, Secretary of Housing and Urban Development,
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing,
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

    Defendants.

---

Civil Action No. 08-cv-02573-RPM

MODOC LASSEN INDIAN HOUSING AUTHORITY, the tribally designated housing entity for the Grindstone Indian Rancheria of Wintun-Wailaki Indians of California,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
BEN CARSON, Secretary of Housing and Urban Development,
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing,
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

    Defendants.

---

Civil Action No. 08-cv-02577-RPM

CHOCTAW NATION OF OKLAHOMA,
HOUSING AUTHORITY OF THE CHOCTAW NATION OF OKLAHOMA,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,
BEN CARSON, Secretary of Housing and Urban Development;
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing,
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

    Defendants.

---

Civil Action Civil Action No. 08-cv-02584-RPM

SICANGU WICOTI AWANYAKAPI CORPORATION,
OGLALA SIOUX (LAKOTA) HOUSING,
TURTLE MOUNTAIN HOUSING AUTHORITY,

WINNEBAGO HOUSING AND DEVELOPMENT COMMISSION,
LOWER BRULE HOUSING AUTHORITY,
SPIRIT LAKE HOUSING CORPORATION, and
TRENTON INDIAN HOUSING AUTHORITY,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT (HUD),
SHAUN DONOVAN, Secretary of Housing and Urban Development,
DEBORAH A. HERNANDEZ, General Deputy Assistant Secretary for Public and Indian Housing, and
GLENDA GREEN, Director, Office of Grants Management, Office of Native American Programs,

    Defendants.

## DEFENDANTS' MOTION FOR RESTITUTION[1]

The Tenth Circuit "reverse[d] that part of the district court's order[s] [that] order[ed] the agency to repay the recipients to the extent the agency had already redistributed or otherwise expended the recaptured funds." *Modoc Lassen Indian Housing Authority v. United States Dep't of Hous. & Urban Dev.*, 881 F.3d 1181, 1186 (10th Cir. 2017) (*Modoc Lassen*). After a judgment is reversed on appeal, as here, the Court may, sua sponte or on motion, order restitution. The Tenth Circuit already determined that restitution here is the proper course; otherwise, its remand for the Court to determine the extent to which specific relief was or was

---

[1] The *Fort Peck* and *Blackfeet* et al. cases are currently stayed. *Fort Peck Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev. et al.*, No. 05-cv-00018-RPM, (*Fort Peck*), ECF No. 159 (Apr. 24, 2018); *Blackfeet Hous. et al. v. U.S. Dep't of Hous. & Urban Dev. et al.*, No. 07-cv-01343-RPM (*Blackfeet* et al.), ECF No.168 (Apr. 24, 2018). Accordingly this motion does not apply to those cases. For context and clarity, however, HUD includes in its discussion below the situation applicable to the plaintiffs in those cases.

not available at the time of the judgments would be superfluous.  And here, the practical effect of the judgment orders was not to deplete the United States Treasury, but rather to reduce the grant funding that other Indian tribes should have received—and will receive once it is restored. Moreover, the plaintiff tribes do not have the defense against restitution that they took the judgment funds with no reasonable awareness that their right to the funds was subject to reversal on appeal to the Tenth Circuit.  Accordingly, HUD asks that the Court order restitution of the judgment amounts to the extent they were reversed by the Tenth Circuit.  Based on the facts adduced in HUD's Report and Declaration, this would mean restoration of any amount the Court ordered based on a recapture from any funds other than fiscal year 2008 Indian Housing Block Grant funding.

**Factual background**

    **A. The district court judgment orders**

On seven different dates from June 2014 to January 2015, this Court issued final judgment orders in the seven cases here on remand.  These are listed, with the amounts ordered for each plaintiff tribe, in Defendants' Report and Declaration, filed on March 30, 2018, and appended here.  *See* Ex. 1 (HUD Report and Declaration) at 6-8.  For ease of reference, we will refer to the filing in its entirety as the "HUD Report and Declaration"; we will refer to the table alone as the "HUD Table"; and we will refer to the declaration alone as the "HUD Declaration."[2]

---

[2] HUD filed the same Report and Declaration in each of the seven cases.  The filing included two attachments: a table compiling information about each recapture and each yearly Indian Housing Block Grant (IHBG) appropriation in relevant years, and a declaration identify the amount of relevant year appropriations available at the time of the judgments.  In each case, the Report and Declaration filing can be found at the following docket numbers: *Modoc Lassen Indian Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev.*, No. 08-cv-02573-RPM (*Modoc Lassen*), ECF No. 98 (Mar. 30, 2018); *Tlingit-Haida Regional Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev. et

The HUD Table and HUD Declaration show that, as of the dates of the judgments, HUD had already distributed or otherwise expended all relevant yearly IHBG appropriations except the fiscal year (FY) 2008 appropriation.[3] The HUD table further shows that there were recaptures of FY 2008 funding from four plaintiff tribes, the Navajo Housing Authority ("Navajo"), the Spirit Lake Housing Corporation ("Spirit Lake"), the Sicangu Wikoti Awanyakapi Corporation ("SWA Corp."), and the Winnebago Housing and Development Commission ("Winnebago").[4] The HUD Table also shows the total judgment amount for all plaintiff tribes including the four tribes with recaptures of FY 2008 funding.[5] For the four plaintiff tribes with FY 2008 recaptures—meaning they lost the recaptured amount of the FY 2008 IHBG appropriation—the amounts lost, the judgment amounts, and the available FY 2008 appropriations at the time of judgment are as follows:

---

*al.*, No. 08-cv-00451-RPM, (*Tlingit-Haida*), ECF No. 112; *Choctaw Nation of Oklahoma and Hous. Auth. of the Choctaw Nation of Oklahoma v. U.S. Dep't of Hous. & Urban Dev. et al.*, No. 08-cv-02577-RPM, (*Choctaw*), ECF No. 107; *Navajo Hous. Auth. v. U.S. Dep't of Hous. & Urban Dev. et al.*, No. 08-CV-00826-RPM, (*Navajo*), ECF No. 110; *Fort Peck*, ECF No. 154; *Sicangu Wikoti Awanyakapi Corp. et al. v. U.S. Dep't of Hous. & Urban Dev. et al.*, No. 08-cv-02584-RPM (*SWA Corp. et al.*), ECF No. 114; *Blackfeet* et al., ECF No. 163.  Appended here as Appendix A is the filing in *Modoc Lassen*, ECF No. 98.
[3] *See* HUD Table, rows 1, 6-7, 9, 18, 30; HUD Declaration ¶¶ 7-12.
[4] HUD Table, column 11.
[5] HUD Table, column 13.

| Plaintiff Tribe | Reduction of FY 2008 Funding (recapture) | Judgment Amount |
|---|---|---|
| FY 2008 appropriations available as of judgment date* | 14,827,652 | |
| Navajo | 6,165,842 | 6,165,842 |
| FY 2008 appropriations available as of judgment date** | 8,566,448 | |
| Spirit Lake | 210,004 | 870,232 |
| SWA Corp. | 174,752 | 1,117,171 |
| Winnebago | 50,369 | 169,250 |

* This is the amount of FY 2008 IHBG appropriations available, but which were subject to this Court's orders enjoining HUD from distributing the funds to any tribe other than specific named plaintiffs.[6]

** This is the amount of FY 2008 IHBG appropriations available after HUD's restoration of funding pursuant to the July 2014 orders in favor of Tlingit-Haida and Navajo.[7]

### B. The district court set-aside orders

In 2008, the Court ordered HUD to set aside FY 2008 IHBG appropriations in three of the cases here on remand. The set-aside orders are appended here. *See* Ex. 2. In *Blackfeet* et al. and *Tlingit Haida*, the Court ordered HUD to set aside specific amounts of the FY 2008 IHBG

---

[6] See *Modoc Lassen*, 881 F.3d at 1196 n.10 ("the district court previously ordered HUD to set aside a portion of the 2008 NAHASDA appropriation for the purpose of repaying the Tribes. To the extent that (1) any of the Tribes allege that HUD wrongfully withheld 2008 NAHASDA grant funds, and (2) the 2008 funds that HUD set aside were sufficient to cover those Tribes' 2008 losses, this sovereign-immunity analysis doesn't apply."). And see HUD Report and Declaration at 9 (the $14,827,562 of FY 2008 IHBG appropriations remaining available before the first judgment order in these cases "corresponds to the $14,827,562 total of FY 2008 funds that HUD set aside pursuant to this Court's stipulated and injunctive orders in Blackfeet et al. . . . ($8,206,219 for the ten plaintiffs), Tlingit-Haida . . . ($1,499,887 for Tlingit-Haida), and Navajo . . . ($5,121,456 for Navajo).").

[7] See HUD Report and Declaration at 10 (explaining that the reduction from $14,827,652 to $8,566,448 equals $6,261,204, which corresponds to the $6,261,114 the Court ordered HUD to restore to Tlingit-Haida and Navajo within 30 days of judgments entered on June 19 and June 30, 2014).

appropriation for each plaintiff in those cases.[8]  The orders prohibited HUD "until the litigation is complete" from distributing the set aside the specified amounts to "any other tribe so that the funds will be available if the Court subsequently order HUD to provide them for the Plaintiffs under federal law." Ex. 2 at 3, 12.  In the third case, *Navajo*, the Court similarly ordered HUD to set aside a specified amount of FY 2008 IHBG appropriations until the litigation is complete so that the funds would "be available if the Court subsequently orders HUD to provide them for the Plaintiff under federal law."  Ex. 2 at 21.

The FY 2008 set asides totaled $14,827,562, consisting of a total of $8,206,219 for the ten plaintiffs in *Blackfeet* et al., $1,499,887 for Tlingit-Haida, and $5,121,456 for Navajo.  *See* HUD Report and Declaration at 9.  Of those plaintiffs with FY 2008 set asides, only Navajo had a recapture that reduced its FY 2008 IHBG funding.  *See* HUD Table, rows 3, 5, and 19-29.

### C. HUD's restoration of funds pursuant to the judgment orders

As the plaintiffs in these cases concede, HUD restored the funds as ordered in each of the judgment orders.  *See Modoc Lassen*, 881 F.3d at 1186 n.3.  In accordance with the judgment orders, HUD restored funds from the FY 2008 set asides for a plaintiff to the extent of the amount set aside (if any) for that plaintiff, and if the set aside was insufficient or the plaintiff had no set aside, HUD restored the remainder from funds available for FY 2015 IHBG grants to all tribes.

---

[8] The plaintiffs in *Blackfeet* included Blackfeet Housing, Pueblo of Acoma Housing Authority, Aleutian Housing Authority, Association of Village Council Presidents Regional Housing Authority, Big Pine Paiute Tribe, Bristol Bay Housing Authority, Chippewa Cree Housing Authority, Interior Regional Housing Authority (dismissed before the judgment currently at issue), Isleta Pueblo Housing Authority, Northwest Inupiat Housing Authority, and Zuni Tribe. The plaintiffs in *Tlingit Haida* included Tlingit Haida Regional Housing Authority and Cook Inlet Housing Authority (dismissed before the judgment currently at issue).

HUD notified all NAHASDA grantee tribes of this, including plaintiff tribes, when it issued final allocations for FY 2015 IHBG grants to all tribes in February 2015. *See* Ex. 3 at 1 (FY 2015 IHBG Allocation cover letter dated Feb 13, 2015, explaining diversion of $9,808,804 to provide IHBG funds to 17 plaintiff tribes in accordance with court judgments in these cases, as well as, for some plaintiffs, funds from FY 2008 IHBG appropriations); *see also* FY 2015 Final Summary - Needs and Allocation Narrative.[9] HUD's notice to all tribes including plaintiffs stated that "[t]he Government is appealing these decisions to the United States Court of Appeals for the Tenth Circuit." Ex. 3 at 2; FY 2015 Final Summary - Needs and Allocation Narrative.

Similar notice was sent to Navajo and Tlingit-Haida when, within 30 days of their June 2014 judgments, HUD restored funds to them from the amount of FY 2008 IHBG appropriations set aside for them pursuant to court order. *See* Ex. 4 (letters from HUD to judgment plaintiffs).

**D. The 10th Circuit reversal, in part, and remand**

HUD appealed the Court's final judgments in all these cases. *See Modoc Lassen*, 881 F.3d 1181 (10th Cir. 2017) (listing all cases). As relevant here, the Tenth Circuit found that "the district court [] ordered HUD to pay the Tribes by 'substituting' *other* funds for the funds to which the Tribes were actually entitled—i.e., funds from past- or future-year NAHASDA appropriations. *Id*. at 1196 (emphasis in original). It held that such substitute monetary relief "constituted an order to provide 'money damages rather than specific relief,'" and so violated Congress's limited waiver of sovereign immunity in 5 U.S.C. § 702. *Id*. at 1198 (quoting *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994). Accordingly,

---

[9] Available at https://www.hud.gov/sites/documents/FY15FINALNEEDSALLOCNAR.PDF.

8

the Tenth Circuit "reverse[d] that part of the district court's order[s] [that] order[ed] the agency to repay the recipients *to the extent the agency had already redistributed or otherwise expended the recaptured funds*" and remanded "for factual findings regarding whether, at the time of the district court's order[s], HUD had the relevant funds at its disposal." *Modoc Lassen*, 881 F.3d at 1186 and 1198 (emphasis added). The Tenth Circuit's remand order would be superfluous if the district court were not required to effectuate the higher court's reversal of its judgments, to the extent they are reversed.

### E. The HUD Report and Declaration provides the information needed for the Court to determine the extent to which its judgments are reversed.

The Tenth Circuit's remand requires the Court to determine the extent to which it could have ordered HUD to restore an amount of funds to an individual plaintiff as specific relief in accordance with the waiver of sovereign immunity in 5 U.S.C. § 702. Specific relief was available only to the extent that, at the time of the judgment orders, HUD had not distributed or otherwise expended IHBG appropriations for the yearly grant from which HUD had recaptured a plaintiff tribe's funding.

HUD's Report and Declaration provides the needed information, first, by restating the amount and year of grant funding recaptured for each recapture from each plaintiff tribe, according the records in these cases. *See* HUD Table, rows 2-5, 8, 10-17, and 19-29, columns 3-11 and supporting footnotes and explanations in the accompanying report with citations to the records in each case. It provides the needed information, second, by comparing the recapture data to the amount of relevant fiscal year IHBG appropriations that were available, i.e., not "already redistributed or otherwise expended," or "at HUD's disposal" to grant to an eligible NAHASDA grantee. *See* HUD Table, highlighted rows 1, 6-7, 9, 18, and 30.

9

As discussed above, specific relief was available for four plaintiff tribes: Navajo, Spirit Lake, SWA, and Winnebago. This is because, as shown in column 11 of the HUD Table, the only yearly appropriations available at the time of any tribe's judgment was FY 2008 IHBG appropriations, and only the four plaintiffs just listed had recaptures from the amount of FY 2008 IHBG grants to which they were otherwise entitled. *Compare* HUD Table, columns 3-10 with column 11.

Other than the amounts shown in column 11 of the HUD table, the judgment amounts for all plaintiffs were substitute monetary relief reversed by the Tenth Circuit because they constituted money damages in violation of the limited waiver of sovereign immunity in 5 U.S.C. § 702 for relief "other than money damages."

The reversed judgment amounts are thus as follows:

| Plaintiff Tribe | Judgment Amount | Less Recapture From Appropriations Available For Specific Relief (FY 2008)* | Equals Substitute Relief, the Amount Reversed by 10th Circuit |
|---|---|---|---|
| Modoc Lassen | 146,764 | 0 | 146,764 |
| Tlingit-Haida | 1,139,658 | 0 | 1,139,658 |
| Choctaw | 841,316 | 0 | 841,316 |
| Navajo | 6,165,842 | 6,165,842 | 0 |
| Fort Peck | 513,354 | 0 | 513,354 |
| *SWA Corp* et al. | | | |
| Lower Brule | 372,442 | 0 | 372,442 |
| Oglala Sioux (Lakota) | 654,053 | 0 | 654,053 |
| Spirit Lake | 870,232 | 210,004 | 660,228 |
| SWA | 1,117,171 | 174,752 | 942,419 |
| Trenton Indian | 413,408 | 0 | 413,408 |
| Turtle Mountain | 1,790,375 | 0 | 1,790,375 |
| Winnebago | 169,250 | 50,369 | 118,881 |
| *Blackfeet* et al. | | | |
| Pueblo of Acoma | 56,106 | 0 | 56,106 |
| Aleutian | 145,089 | 0 | 145,089 |
| Ass'n of Village Council Presidents | 1,402,062 | 0 | 1,402,062 |
| Big Pine Paiute | 264,832 | 0 | 264,832 |
| Blackfeet | 575,510 | 0 | 575,510 |
| Bristol Bay | 230,145 | 0 | 230,145 |
| Chippewa Cree | 656,200 | 0 | 656,200 |
| Isleta Pueblo | 121,285 | 0 | 121,285 |
| Northwest Inupiat | 1,656,043 | 0 | 1,656,043 |
| Zuni | 1,498,090 | 0 | 1,498,090 |

\* Amounts available but for the Court's set-aside orders.
Entries in grey text denote plaintiffs in cases that are currently stayed.

The table above represents the state of the funds available *but for the Court's set-aside orders*, which prohibited distribution of otherwise available FY 2008 IHBG appropriations until completion of the litigation "to any other tribe so that the funds will be available if the Court

11

subsequently orders HUD to provide them for the Plaintiffs under federal law." *See e.g.*, Ex. 2 at 2-3; *see also Modoc Lassen*, 881 F.3d at 1196 n.10 and 1199 n.12 (affirming judgments to the extent covered by set asides for that plaintiff). To effectuate the Tenth Circuit's partial reversal and remand, the Court could amend its set-aside orders, nunc pro tunc, so that the valid claims for specific relief from FY 2008 appropriations otherwise available at the time of judgment (by Navajo, Spirit Lake, SWA, and Winnebago) are not found invalid because of set asides for plaintiff tribes that have no valid claim for specific relief from FY 2008 appropriations.

**Argument**

To effectuate the Tenth Circuit's partial reversal and remand, the Court should amend its set-aside orders nunc pro tunc and order restoration of all but the judgment amounts to Navajo, Spirit Lake, SWA, and Winnebago that would thus have been orders for specific relief from FY 2008 IHBG appropriations.

> **A. The amount of each judgment order that was reversed by the Tenth Circuit should be returned to HUD for distribution to all Tribes in accordance with NAHASDA.**

The Supreme Court has long since "given recognition to the rule as one of general application that what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of reversal, by the litigants opposed to him, the beneficiaries of the error." *Atlantic Coast Line R.R. Co. v. Florida*, 295 U.S. 301, 309 (1935); *see also States v. Morgan*, 307 U.S. 183, 197-98 (1939); *Baltimore & Ohio R.R. v. United States*, 279 U.S. 781, 785-87 (1929). The Tenth Circuit has also recognized this rule, holding that "[s]hould [a] judgment be reversed on appeal, a district court may, on motion or sua sponte, order the judgment creditor to restore the benefits obtained." *Strong v. Laubach*, 443 F.3d 1297, 1300

12

(10th Cir. 2006) (citing *Baltimore & Ohio R.R.*, 279 U.S. at 786; Restatement of Restitution § 74 cmt. a). Not only private parties, but also the Federal Government may be entitled to restitution. *Laskowski v. Spellings*, 443 F.3d 930, 934 (7th Cir. 2006) (citing e.g., *Wyandotte Transp. Co. v. United States*, 389 U.S. 191, 203-05 (1967)); *id*. at 944 (same in dissenting opinion).

Here the Tenth Circuit "reverse[d] that portion of the district court's order[s]" "to the extent the agency had already redistributed or otherwise expended the recaptured funds." *Modoc Lassen*, 881 F.3d at 1186. As shown above, "the agency had already redistributed or otherwise expended" all the yearly appropriations for grants from which HUD had recaptured funds—except in the case of the recaptures from FY 2008 grants to Navajo, Spirit Lake, SWA, and Winnebago.

It could be argued that—notwithstanding the fact that the FY 2008 IHBG appropriations were not distributed or otherwise expended at the time of the judgments for those four plaintiffs—those funds were not "at HUD's disposal" because they were subject to the court-ordered set asides requiring that they remain available for other plaintiffs until the completion of those other plaintiffs' litigation. However, HUD believes the Court can determine that, because the Tenth Circuit has held that only tribes with FY 2008 recaptures can have a claim "under federal law" for relief from FY 2008 funds set aside, the set-aside orders should be amended nunc pro tunc so that the FY 2008 set-aside funds may be considered to have been available to Navajo, Spirit Lake, SWA, and Winnebago at the time of their judgments so that specific relief was available. HUD would not oppose such amendments.[10]

---

[10] This would require amending the set-aside order in *Blackfeet* et al., which is currently stayed, and those plaintiffs may want to be heard on that issue. There are, in any case, further

13

Assuming amendment of the set-aside orders, the Tenth Circuit reversed the judgment orders to the following extent:

| Plaintiff Tribe | Judgment Amount | Less Recapture From Appropriations Available For Specific Relief (FY 2008) | Equals Substitute Relief, the Amount Reversed by 10th Circuit |
|---|---|---|---|
| Modoc Lassen | 146,764 | 0 | 146,764 |
| Tlingit-Haida | 1,139,658 | 0 | 1,139,658 |
| Choctaw | 841,316 | 0 | 841,316 |
| Navajo | 6,165,842 | 6,165,842 | 0 |
| Fort Peck | 513,354 | 0 | 513,354 |
| *SWA Corp et al.* | | | |
| Lower Brule | 372,442 | 0 | 372,442 |
| Oglala Sioux (Lakota) | 654,053 | 0 | 654,053 |
| Spirit Lake | 870,232 | 210,004 | 660,228 |
| SWA | 1,117,171 | 174,752 | 942,419 |
| Trenton Indian | 413,408 | 0 | 413,408 |
| Turtle Mountain | 1,790,375 | 0 | 1,790,375 |
| Winnebago | 169,250 | 50,369 | 118,881 |
| *Blackfeet et al.* | | | |
| Pueblo of Acoma | 56,106 | 0 | 56,106 |
| Aleutian | 145,089 | 0 | 145,089 |
| Ass'n of Village Council Presidents | 1,402,062 | 0 | 1,402,062 |
| Big Pine Paiute | 264,832 | 0 | 264,832 |
| Blackfeet | 575,510 | 0 | 575,510 |
| Bristol Bay | 230,145 | 0 | 230,145 |
| Chippewa Cree | 656,200 | 0 | 656,200 |
| Isleta Pueblo | 121,285 | 0 | 121,285 |
| Northwest Inupiat | 1,656,043 | 0 | 1,656,043 |
| Zuni | 1,498,090 | 0 | 1,498,090 |

Entries in grey text denote plaintiffs in cases that are currently stayed.

---

proceedings in the active cases to be resolved, including HUD's pending stay motions and briefing on Plaintiffs' motion for additional information.

Those reversed judgment amounts should therefore be returned to HUD.

**B. Restitution of the reversed judgment amounts is not inequitable.**

Restitution is an equitable remedy. *Atlantic Coast Line R.R.*, 295 U.S. at 309. Should a judgment be reversed, it is the presumptively equitable outcome. "A person who has conferred a benefit upon another in compliance with a judgment or whose property has been taken thereunder, *is entitled to restitution* if the judgment is reversed, or set aside, unless restitution would be inequitable." Restatement of Restitution § 74 (1937) (emphasis added). *See also Strong v. Laubauch*, 443 F.3d at 1300 (a district court may order restitution of a reversed judgment "sua sponte," without review of the equities). In other words, a litigant's retention of the benefit conferred by an erroneous judgment is presumptively unjust.

In keeping with this presumption, the Tenth Circuit remanded the cases for fact-finding about the extent to which its judgment orders were reversed in each case. The Tenth Circuit could have no reason to mandate this fact-finding if it did not intend for the Court to *actually reverse* the fund transfer from HUD to a plaintiff "to the extent" the transfer was substitute monetary relief in violation of the sovereign immunity reserved by Congress in 5 U.S.C. § 702. If the plaintiffs were entitled to retain the amount of funding that HUD was wrongly compelled to divert from grants to other IHBG recipient tribes, the fact-finding ordered by the Tenth Circuit would be moot and the remand superfluous. The Tenth Circuit's determination that restoration of the wrongful judgments is thus necessarily implied in its remand order.

Nor is there any reason to find restitution inequitable here.

First, by restoring the wrongful judgment funds to HUD, they will be restored to all IHBG recipient tribes in accordance with each tribe's right to them under NAHASDA.

15

NAHASDA requires that all funds made available in a given year shall be allocated for IHBG grants according to formula. 24 U.S.C. § 4151. When the wrongful judgment amounts become available by return to HUD, they will be redistributed in the next yearly IHBG allocation to all tribes (including the plaintiffs).

The converse of this fact is that allowing the plaintiffs to retain the judgment funds would inequitably deprive all the other IHBG recipient tribes of NAHASDA funds they would have and should have received but for the erroneous judgments. *See* Ex. 3 (FY 2015 Final Allocation cover letter explaining that the judgments reduced the amount granted to all other tribes, including plaintiffs with respect to judgments for other plaintiffs); *see also* FY 2015 Final Summaries (MS-Excel)[11] (showing in column "W" the amount each tribe lost as a result of the judgment orders, and showing e.g., at row 313, that Navajo lost $1,365,061 in FY 2015 due to the judgments for the other plaintiffs). As recognized by the Tenth Circuit, because HUD must distribute available appropriations amongst all eligible tribes from a finite yearly pool, the wrongful overfunding of one tribe deprives all other tribes of their due amount of IHBG funding. *See Modoc Lassen*, 881 F.3d at 1186.

Second, allowing the plaintiffs to retain the judgment funds in violation of the Government's sovereign immunity would be contrary to foundational public interest in a government of separated powers. The Tenth Circuit held that the Court's orders constituted awards of money damages barred by sovereign immunity. *Modoc Lasssen*, 881 F.3d at 1195-96. Equitable principles cannot waive sovereign immunity. *See Lane v. Pena*, 518 U.S. 187, 192

---

[11] Available at https://www.hud.gov/program_offices/public_indian_housing/ih/codetalk/onap/ihbgformula.

(1996) (waivers of sovereign immunity must be unequivocally expressed in statutory text); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1981) ("Limitations and conditions upon which the Government consents to be sued musts be strictly observed and exceptions thereto are not to be implied."). Denying return of the judgment amounts reversed because they violated the Government's sovereign immunity because it might seem fair would allow courts, not Congress, to carve out an exception to the Government's sovereign immunity at the risk of upsetting the separation of powers. *See* Vicki C. Jackson, *Suing the Federal Government: Sovereignty, Immunity, and Judicial Independence*, 35 Geo. Wash. Int'l L. Rev. 521-609 (2003) (discussing how sovereign immunity has functioned as a separation of powers doctrine); Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 V. and L. Rev. 1529, 1530 (1992) (arguing that much of federal sovereign-immunity doctrine is supported by "a desire to maintain a proper balance among the branches of the federal government").

Finally, restitution can be found inequitable if a recipient "relied to its detriment on [a] reasonable belief that it was legally entitled" to the benefit conferred. *Laskowski*, 443 F.3d at 936. But that is not the case here. All the plaintiff tribes were aware that their entitlement to the judgment funds was disputable, actually disputed, and subject to reversal on HUD's appeal to the Tenth Circuit.

Plaintiffs were aware their right to substitute monetary relief was a disputed issue. This Court held in 2006 that a plaintiff tribe had no entitlement to a judgment order that then, as now, would have constituted substitute monetary relief. *Fort Peck Hous. Auth. v. United States HUD*, No. 05-cv-00018-RPM, 2006 U.S. Dist. LEXIS 53203, *4 (D. Colo. Aug. 1, 2006). Although the Court later reconsidered that holding, *Fort Peck Hous. Auth. v. United States HUD*, No. 05-

cv-00018-RPM, 2014 U.S. Dist. LEXIS 31012, *16-*17 (D. Colo. Mar. 7, 2014), that occurred after the parties disputed the issue in briefing to the Court. *Id*. at *14-*15.

Moreover, HUD made clear to the plaintiffs that their right to the judgment funds was subject to its appeal to the Tenth Circuit. At the time HUD provided the judgment funds to the plaintiffs in compliance with the Court's orders, HUD advised the tribes that HUD was appealing the judgments to the Tenth Circuit and even more specifically, that "[i]f the Government . . . is successful [on appeal], the Government may seek to recover these funds by any appropriate means." Ex. 3 at 1; *and e.g.*, Ex. 4 at 1, 3. There is no inequity here based on detrimental reliance. *Cf. Strong*, 443 F.3d at 1300 (rejecting argument that restitution would be inequitable because plaintiff relied on what was a lawful judgment before appeal).

Accordingly, the Court should order the plaintiffs to return the amount of funds that HUD provided them pursuant to the judgment orders, to the extent those judgments are reversed as specified above.

**Conclusion**

For the reasons given above, the Court should—assuming that it amends the set-aside orders as described above—order the tribes in the active cases to return to HUD the following amounts of judgments that the Tenth Circuit reversed:

| Plaintiff Tribe | Amount To be Returned (Reversed by 10th Circuit) |
|---|---|
| Modoc Lassen | 146,764 |
| Tlingit-Haida | 1,139,658 |
| Choctaw | 841,316 |
| Navajo | 0 |
| *SWA Corp et al.* | |
| Lower Brule | 372,442 |
| Oglala Sioux (Lakota) | 654,053 |
| Spirit Lake | 660,228 |
| SWA | 942,419 |
| Trenton Indian | 413,408 |
| Turtle Mountain | 1,790,375 |
| Winnebago | 118,881 |

Dated May 14, 2018

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

*s/ Timothy B. Jafek*
Timothy B. Jafek
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Tel:   (303) 454-0100
Fax:   (303) 454-0407
timothy.jafek@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

      I hereby certify that on May 14, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to the following e-mail addresses:

    jon@stsl.com (in *Tlingit-Haida*)
    ckaufman@quarles.com (in *Navajo*)
    drapport@pacbell.net (in *Modoc*)
    lbullock@bullocklawtulsa.com (in *Choctaw*)
    wagenlander@wagenlander.com, amberlh@wagenlander.com,
    blainmyhre@gmail.com (in *SWA*)

and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand delivery, etc.) indicated by the nonparticipant's name:

                              *s/ Timothy B. Jafek*
                              Timothy B. Jafek